UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN DANIELS,<br><br>   Plaintiff,<br><br>v.<br><br>ALVARIA, INC., NOBLE SYSTEMS CORPORATION, and ASPECT SOFTWARE, INC.,<br><br>   Defendants. | Civil Action No. |

## NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Alvaria, Inc. ("Alvaria") and Noble Systems Corporation ("Noble")[1] (together, "Defendants") hereby remove this action from the Middlesex County Superior Court of the Commonwealth of Massachusetts to the United States District Court for the District of Massachusetts ("Notice of Removal").

As discussed in more detail herein, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and this matter may be removed pursuant to 28 U.S.C. § 1441, as it is a civil action in which neither the plaintiff nor any defendants are citizens of the same state and in which the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(a)(1) and 1441(a) and (b). Defendants respectfully submit to this Honorable Court the following information in further support of this Notice of Removal:

---

[1] As discussed in <u>Exhibit D</u>, the Declaration of Christie Babalis ("Babalis Decl."), Alvaria was formed on or about May 10, 2021, when Defendant Noble merged with Defendant Aspect, forming Alvaria. As part of that transaction, Defendant Aspect's name was changed to Alvaria. Accordingly, Aspect Software, Inc. no longer exists as a separate legal entity.

**BACKGROUND**

1. On December 7, 2022, Plaintiff Karen Daniels ("Plaintiff") filed a Complaint (the "Complaint") in the Middlesex County Superior Court of the Commonwealth of Massachusetts, titled *Karen Daniels v. Alvaria, Inc., Noble Systems Corporation, and Aspect Software, Inc.*, designated as Docket No. 2281-CV-04175 (the "State Court Action").

2. Plaintiff's Complaint alleges 10 causes of action against Defendants: i) violation of M.G.L. c. 149, §§ 148, 150, for unpaid commissions; ii) violation of M.G.L. c. 149 and c. 151 for retaliation; iii) violation of M.G.L. c. 151B, § 4 for sex discrimination and harassment; iv) violation of M.G.L. c. 151B, § 4(4) for retaliation; v) breach of contract; vi) breach of the implied covenant of good faith and fair dealing; vii) fraud/misrepresentation/deceit; viii) estoppel; ix) quantum meruit; and, x) unjust enrichment.

3. The process, pleadings, and orders served on Defendant Alvaria are attached hereto as Exhibit A. The process, pleadings, and orders served on Defendant Noble are attached hereto as Exhibit B.

**SATISFACTION OF PROCEDURAL REQUIREMENTS FOR REMOVAL**

4. An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the defendant, within 30 days of Defendant receiving an "initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b).

5. Here, Plaintiff served a Summons and a copy of the Complaint on Defendants on February 1, 2023. *See* Exhibit A; *see also* Exhibit B.

6. Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as this filing is made within 30 days from the date on which Defendants received notice of the State Court Action.

### PROPER JURISDICTION AND VENUE REQUIRED FOR REMOVAL

7. Venue is proper in the United States District Court for the District of Massachusetts insofar as Plaintiff represents her workplace as Middlesex County during the events giving rise to this action, and Plaintiff originally filed this action in Middlesex County Superior Court, which is within this Court's jurisdiction. *See* 28 U.S.C. §§ 1391(a) and 1441(a).

### PROVISION OF NOTICES REQUIRED FOR REMOVAL

8. As required by 28 U.S.C. § 1446(d), Defendants will provide written notice of the filing of this Notice of Removal to Plaintiff, through service of this document and the exhibits thereto on Plaintiff through her counsel of record.

9. Defendants will also file this Notice of Removal with the Clerk of the Middlesex County Superior Court. *See* Defendants' Notice to State Court of Removal of Civil Action to Federal Court, attached hereto as Exhibit C.

### ADDITIONAL FACTS AND LAW SUPPORTING REMOVAL ON THE BASIS OF DIVERSITY JURISDICTION

10. As set forth more fully below, this action is properly removed to this Court pursuant to 28 U.S.C. § 1441, because Defendants have satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. 1332. Specifically, this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, as Plaintiff alleges that Plaintiff is entitled to an award in excess of $75,000 as a result of Defendants' alleged conduct.

4879-2911-1377.1 / 049236-1042

**Complete Diversity of Citizenship Exists**

11. Diversity jurisdiction "requires complete diversity between the plaintiffs and the defendants in the action" at the time the complaint is filed. *Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 17 (1st Cir. 2008).

12. Here, Plaintiff is a resident of Bedford, Massachusetts, and is a citizen of Massachusetts. *See* <u>Exhibit A</u>, Complaint, ¶ 2.

13. For purposes of diversity jurisdiction, a corporation is a citizen of every state and foreign state in which it is incorporated and the one state or foreign state in which it maintains its principal place of business. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). A corporation is deemed to have maintained its principal place of business at its "nerve center," which has traditionally been the location from which the corporation's "officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 559 U.S. at 92-93.

14. Courts must thoughtfully determine the "nerve center" when assessing the same for purposes of diversity jurisdiction. The nerve center is "not simply an office where the corporation holds its board meetings." *See D.S. Brown Co. v. White-Schiavone*, Civil Action No. 19-30095-NMG, at *16-19 (D. Mass. Oct. 29, 2020), citing *Hertz Corp.*, 559 U.S. at 93. The "nerve center" is "more than a mail drop box." *Hertz Corp.*, 599 U.S. at 97. As such, neither "run-of-the-mill corporate filings," *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 41 (1st Cir. 2016) (citing *Hertz Corp.*, 559 U.S. at 97), nor representations made in "documents filed with a secretary of state that indicate the location of corporate headquarters" are binding on this Court as to the determination of a corporation's "nerve center." *See Transp. & Storage Sol. Inc. v. KLT Indus., Inc.*, No. 13-cv-40137, 2014 WL 5320174, at *3 (D. Mass. Oct. 17, 2014) ("[r]epresentations made in annual reports or other documents filed with a secretary of state that indicate the location of a

corporate headquarters do not bind a court for purposes of diversity jurisdiction"). The "nerve center" is not even where "the bulk of the business activities visible to the public" occur. *Hertz Corp.*, 559 U.S. at 96 (emphasis added). **Rather, the "nerve center" is where the "top officers [who] direct those activities" sit.** *Id*.

15. Even back in 2010, the *Hertz Corp.* Court sagely realized that "there may be no perfect test that satisfies all administrative and purposive criteria. We recognize as well that, under the 'nerve center' test we adopt today, there will be hard cases. For example, in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Hertz Corp.*, 559 U.S. at 95-96.

16. This is one such case where the Defendants' leadership is disbursed throughout the country, and there truly is no physical place that serves as its operational nerve center. While this area of law continues to evolve, for the purposes of this analysis, one thing is quite simple: **neither Alvaria nor Noble has a "nerve center" in Massachusetts**.

17. Alvaria is a corporation organized and existing under the laws of the State of Delaware. *See* Exhibit D, Declaration of Christie Babalis ("Babalis Decl.") at ¶ 5. Alvaria has never been incorporated in Massachusetts. Exhibit D, Babalis Decl. at ¶ 6.

18. There are no Executive Vice Presidents or Senior Vice Presidents working for Alvaria in Massachusetts. Exhibit D, Babalis Decl. at ¶ 7. None of Alvaria's executive leadership team works out of Massachusetts, nor is any a resident in Massachusetts. *Id*. at ¶ 8. The executive leadership team tasked with the direction, control, and coordination of Alvaria's business operated remotely as of the date of the filing of this action, from Utah (1), New York (2), Texas (2), Colorado (3), New Hampshire (1), and Missouri (1). *Id*. at ¶¶ 10 – 11.

19. While Alvaria is registered as a foreign corporation in Massachusetts, and lists an address of 5 Technology Park Drive, Westford, Massachusetts, 01886 ("5 Technology Park Drive") as the location of its Principal Office in connection with said registration, as of the date of the filing of this action, Alvaria's office at 5 Technology Park Drive was nearly vacant, and is slated to close once its lease ends. Exhibit D, Babalis Decl. at ¶ 8. One Alvaria employee visits this office for the primary purpose of gathering mail delivered there. Exhibit D, Babalis Decl. at ¶ 8; *see also Hertz Corp.*, 599 U.S. at 97 (nerve center is not just a mail drop box); *Harrison*, 811 F.3d at 41 (addresses provided in documents filed with a secretary of state that indicate the location of corporate headquarters do not baldly determine a corporation's nerve center). This employee is not an Alvaria executive. Exhibit D, Babalis Decl. at ¶ 8. Again, none of the members of Alvaria's executive leadership team tasked with the direction, control, and coordination of Alvaria's business works from 5 Technology Park Drive. *Id*. at ¶¶ 8, 10 – 11. Indeed, none of the members of Alvaria's executive leadership team is a resident in Massachusetts. *Id*.

20. In light of the foregoing, Alvaria is a citizen of Delaware and Alvaria **is not** a citizen of Massachusetts.

21. Noble is a corporation organized and existing under the laws of the State of Georgia. *See* Exhibit D, Babalis Decl. at ¶ 13. Noble has never been incorporated in Massachusetts. *Id*. at ¶ 14. There are no Executive Vice Presidents or Senior Vice Presidents working for Noble in Massachusetts. *Id*. at ¶ 15. The executive leadership team tasked with the direction, control, and coordination of Noble's business operated remotely as of the date of the filing of this action. *Id*. at ¶¶ 16 – 17. None of Noble's executive leadership team is a resident in Massachusetts, nor works out of Massachusetts. *Id*. Rather, Noble's executive leadership team conducts business through

remote platforms, from Utah (1), New York (2), Texas (2), Colorado (3), New Hampshire (1), and Missouri (1). *Id*. at ¶ 18.

22. Noble lists an address of 5 Technology Park Drive, Westford, Massachusetts, 01886, as the location of its Principal Office in connection with its Georgia incorporation. However, as of the date of the filing of this action, Noble conducted no business at this address. Exhibit D, Babalis Decl. at ¶ 16. None of the members of Noble's executive leadership team tasked with the direction, control, and coordination of Noble's business work from 5 Technology Park Drive. *Id*. at ¶ 17. Indeed, none of the members of Noble's executive leadership team are resident in Massachusetts. *Id*. at ¶¶ 16 – 17.

23. In light of the foregoing, Noble is a citizen of Georgia and **is not** a citizen of Massachusetts.

24. For the purposes of this analysis, this Court should ignore the **sham defendant** Aspect Software, Inc. The characterization of Defendant Aspect as i) a separately existing ii) Massachusetts corporation is inaccurate on both fronts, and ironically cut down by the allegations set forth in Plaintiff's own Complaint. Against this backdrop, it is clear that Plaintiff joined this sham defendant solely for the purpose of trying to defeat diversity.

25. Aspect has no place as a defendant to this action, nor is it a player for the purpose of diversity jurisdiction analysis. As discussed in the concurrently-filed Declaration of Christie Babalis, Alvaria was formed in 2021, when Defendant Noble merged with Defendant Aspect, forming Alvaria. Exhibit D, Babalis Decl. at ¶ 3. As part of that transaction, the name of the existing Delaware Corporation Aspect Software, Inc. **was changed to Alvaria**. *See id*. Plaintiff's own Complaint recognizes that Alvaria (which Plaintiff concedes is a Delaware Corporation [*see* Exhibit A, ¶ 5]) was formerly the Delaware Corporation named Aspect: "On June 11, 2021,

Defendant Aspect filed a Certificate of Amendment with the Massachusetts Secretary of State to change the [foreign] corporation's name to "Alvaria, Inc." *See* Exhibit A, Complaint, ¶¶ 4 – 5.

26. "A mere change in the name of a corporation, either by the legislature or by the corporators or stockholders under legislative authority, does not, generally speaking, affect the identity of the corporation, nor in any way affect the rights, privileges, or obligations previously acquired or incurred by it. Indeed, it has been said that a change of name by a corporation has no more effect upon the identity of the corporation than a change of name by a natural person has upon the identity of such person. The corporation, upon such change in its name, is in no sense a new corporation, nor the successor of the original one, but remains and continues to be the original corporation. It is the same corporation with a different name, and its character is in no respect changed." *Coken Co., Inc. v. Dep't of Public Works*, 9 Mass. App. Ct. 586, 590 (Mass. App. Ct. 1980), quoting 6 Fletcher, Cyclopedia of Corporations § 2456, at 216 (rev. perm. ed. 1979).

27. As discussed above, Alvaria (formerly Aspect) is a citizen of Delaware and not Massachusetts.

28. Because Plaintiff is a citizen of Massachusetts, Alvaria is a citizen of Delaware and not Massachusetts, and Noble is a citizen of Georgia and not Massachusetts, there is complete diversity of citizenship between Plaintiff and Defendants.

**The Amount in Controversy Exceeds the Jurisdictional Requirement**

29. Although the text of Plaintiff's Complaint does not specify the precise amount of damages sought, there is a reasonable probability that the amount in controversy in this case exceeds the jurisdictional threshold of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).

4879-2911-1377.1 / 049236-1042

30. For one, Plaintiff alleges the following damages on her Civil Action Cover Sheet: lost wages in the amount of $2,947,620.00; reasonably anticipated lost wages in the amount of $19,000,000.00; and, "treble damages, compensatory damages, emotional distress damages and punitive damages, plus interest, costs, and reasonable attorney fees, etc." in the amount of $23,000,000.00. *See, e.g.,* Exhibit A.

31. Setting aside, *arguendo*, Plaintiff's attestation to, and demand for, alleged damages in this action, when removal is based on diversity of citizenship and the initial pleading seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy." 28 U.S.C. § 1446(c)(2). A removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).

32. Without admitting liability or that Plaintiff is entitled to any damages, Defendants state that the amount in controversy in this action more likely than not exceeds $75,000, exclusive of interest and costs.

33. The Court need only consider Plaintiff's alleged back wages to see that the amount in controversy in this action more likely than not exceeds $75,000, exclusive of interest and costs. Here, Plaintiff claims that she was terminated from her employment with Alvaria on February 14, 2022. Exhibit A, ¶ 77. Plaintiff's base salary at that juncture was $110,000.00[2] or $2,115.38/week. *See* Exhibit D, Babalis Decl., ¶ 21. If the Court assigned a trial date next week, Plaintiff will, at the very least, make a claim for alleged back wages for 54 weeks of work, and the amount in controversy for Plaintiff's lost wage claims is thus an estimated $114,230.77.

---

[2] Note that in connection with incentive compensation, Plaintiff earned $855,770.52 in 2020 and $742,422.51 in 2021. Exhibit D, Babalis Decl., ¶ 21.

34. M.G.L. c. 175M, § 9 also permits the recovery of "3 times the lost wages, benefits and other remuneration and the interest thereon." Multiple damages "must be taken into account in calculating the amount in controversy." *Lucas v. Ultima Framingham LLC*, 973 F. Supp. 2d 98, 101 (D.Mass. 2013).

35. Plaintiff also seeks attorneys' fees. Attorneys' fees are included in determining the amount in controversy. *See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 81 n.15 (1st Cir. 2014).

36. Again, while **Defendants' position is that Plaintiff is not entitled to damages in any amount**, there is nonetheless a reasonable probability that the amount in controversy in this case exceeds $75,000.00, exclusive of interest and costs.

37. Accordingly, this Court has jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1332(a). 28 U.S.C. § 1332(a); *see Barrell v. Lombardi*, 239 F.3d. 23, 30 (1st Cir 2001) (the amount in controversy requirement is satisfied when it is not apparent from the face of the complaint that plaintiff "never was entitled to recover a sum equal to, or in excess of" $75,000.00).

## CONCLUSION

38. **WHEREFORE**, pursuant to 28 U.S.C. §1332, 1441, and 1446, Defendants remove the State Court Action from Middlesex County Superior Court to the United States District Court for the District of Massachusetts, and request that this Court assume full jurisdiction over this matter as provided by law.

39. By removing this action to this Court, Defendants do not waive any defenses, objections, or motions available to them under state or federal law, including any defenses under Rule 12 of the Federal Rules of Civil Procedure.

40. If any question arises regarding the propriety of the removal of this action, Defendants respectfully request the opportunity to present evidence in support of the position that this case is removable. *See Dart Cherokee Basin Operating Co.*, 135 S.Ct. 553-54.

Respectfully submitted,

ALVARIA, INC.
NOBLE SYSTEMS CORPORATION

By their attorneys,

*/s/ Amy L. Ventry-Kagan*
Amy L. Ventry-Kagan, Bar No. 569417
*aventry@littler.com*
Vanessa M. Cohn, Bar No. 691192
*vcohn@littler.com*

LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Telephone:   617.378.6000
Facsimile:   617.737.0052

Dated: February 21, 2023

## CERTIFICATE OF SERVICE

I, Amy L. Ventry-Kagan, hereby certify that, on this 21st day of February, 2023, the foregoing Notice of Removal of Civil Action to Federal Court was filed electronically through the ECF system, is available for viewing and downloading from the ECF system, and will be sent electronically all registered participants identified on the Notice of Electronic Filing and via first class mail to all non-registered participants identified on the Notice of Electronic Filing and plaintiff's counsel of record:

Melissa Anne Pomfred
Pomfred Law Offices, PLLC
5 East Street
Franklin, MA 02038

*/s/ Amy L. Ventry-Kagan*
Amy L. Ventry-Kagan